## Mossburger v. Eiler

*Timothy G. Uhrich,* for plaintiff.
*Jan Ira Medoff,* for defendant.

WECHT, *A.J.,* May 1, 2009—Here lies yet another sad tale of a broken family whose contentious, long-distance custody dispute has been aggravated and intensified by our essentially unregulated, unaccountable, and uncaring airline industry. It is not the first such episode. Sadly, there is every reason to suspect that it will not be the last.

Pursuant to an order of court dated July 25, 2008, defendant Kevin A. Eiler (Father) exercises primary custody of the parties' 8-year-old child, Lita (d.o.b. 2/12/01), in Allegheny County, Pennsylvania, while plaintiff Christina M. Mossburger (Mother) exercises partial custody in Fairbanks, Alaska. In compliance with that order, Father purchased airline tickets to travel with Lita from Pittsburgh to Fairbanks (via Chicago and Anchorage) on December 23, 2008. The reason for Father's traveling with the child was that the child was too young to travel unaccompanied.

On December 23, 2008, Father and Lita arrived at the Pittsburgh Airport at 12:30 p.m. or 1 p.m. for a 3:45 p.m. flight. American Airlines rewarded them for their diligence in arriving early by consigning them to wait until approximately 7 p.m.

Because of Father's and Lita's delayed departure from Pittsburgh, they arrived too late in Chicago to catch their connecting flight to Anchorage on American Airlines' "partner" Alaska Airlines.

When Father and child left Pittsburgh, the airline must (or should) have known that there was no way Father and Lita could make their connecting Chicago to Anchorage flight, and that the "weather" in Chicago (Chicago weather being a new discovery for the airline) would not allow for any other flights that evening. Had any airline employee advised Father of these facts before he left Pittsburgh, Father could have stayed in Pittsburgh, tried to make other arrangements immediately, and avoided the rest of the expense, delay, stress and inconvenience he and the then 7-year-old Lita encountered.

When Father and Lita arrived in Chicago on the night of December 23, they were met by enormous milling crowds in the airport terminal. While there was an airline employee waiting near the gate, that employee merely directed the passengers to a line of several hundred people waiting to speak with a ticketing agent. Father faithfully waited in line for two to three hours with his 7-year-old child to gain information about how and when he could connect to Fairbanks via Anchorage. After finally reaching the counter, Father displayed this court's order to the airline clerk because Father knew that he was required to deliver Lita to Mother. The clerk told Father that he could try to stand-by for a flight on December 26, but that his chances of actually getting on that flight were not good, and that Father could elect to wait for the privilege of purchasing new tickets for seats on flights scheduled for December 28.

Faced with the prospect of staying in Chicago, with all the attendant expenses, for several days, at Christmas, with a 7-year-old child, or returning home and trying again, Father reasonably decided to try to return to Pittsburgh. Father then was forced to overnight with the child in Chicago at a cost of $90 for the hotel room (not including meals and other expenses; the airline could only spring for a portion of the room), and then catch a flight to Philadelphia the next morning (Christmas Eve) (Pittsburgh being unavailable for some unknown reason) with the intention to return to Pittsburgh the same day.

Father was met in Philadelphia with yet another "weather" delay. He and Lita then were forced to spend Christmas Eve in Philadelphia and return to Pittsburgh on Christmas Day. While the airline did pay for the hotel

in Philadelphia, Father was forced to incur expenses for meals. More importantly, Lita was forced to incur a Christmas Eve spent in an airport hotel. A casual observer might wonder how this situation would have played out if the child had been a year or two older and had been traveling alone in this wintry ordeal. Would the airline have let a minor wait in the Chicago airport for four or five days until the next available flight? Does the airline even care?

Upon his eventual return to Pittsburgh on Christmas Day, Father (who is a cook, not a lawyer) was compelled to spend hours of the family's remaining holiday time making several telephone calls to the airline trying to get the child and himself to Alaska on a different flight. After many calls, Father finally was able to book December 28 travel. During these telephone calls, Father initially was put on hold for hours, and initially was told that he would have to buy an entirely separate ticket for an additional $2,000[1] for the Pittsburgh to Chicago and Chicago to Pittsburgh portions of his original tickets that he and the child had used.[2]

Mother presented a petition for contempt, alleging that Father had willfully failed to comply with the order's requirement that the child travel on the first flight available after school recesses for winter break pursuant to the July 25, 2008 order. Father opposed the petition, and this court scheduled a hearing.

---

1. Father paid $3,700 for his initial Pittsburgh to Fairbanks tickets, yet the airline stated that the single leg Pittsburgh to Chicago flight would cost $2,000.

2. Father was able to get this additional fee waived, but only after a four-hour phone call with the airline.

At the hearing, there was no proof that Father had willfully failed to comply. To the contrary, Father diligently had attempted to comply. He had been thwarted by the airlines' misfeasance, incompetence, and utter callousness.

Because Father was not in contempt, the court did not hold him in contempt. The court will order that Mother obtain two extra days on both ends of the summer this year. Currently, Mother obtains custody of the child the seventh day after school recesses for the summer, and returns custody the seventh day before school begins. This coming summer, she will obtain custody the fifth day after school ends, and return custody the fifth day before school begins. The court is aware that Father may already have purchased tickets for the child and that this may, unfortunately, cause additional expense for changing the tickets. In such case, we once again see proof that, regardless of responsibility for causing a problem, the airline always profits in the end.

An order in accordance with this memorandum follows.

## ORDER

And now, May 1, 2009, in accordance with the foregoing memorandum, and following record hearing on April 30, 2009, it is hereby ordered that:

(1) Mother's petition for contempt is denied. Father is not in contempt of the July 25, 2008 order, because Father did not willfully fail to comply.

(2) Mother is entitled to make-up time with the child. For the summer of 2009, Mother's custody shall begin on the fifth day after school ends and shall end on the fifth day before school begins.